**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

EARL G. ANTE,

    Plaintiff,

v.

OFFICE DEPOT BUSINESS SERVICES, a CORPORATION, BLACK CORPORATION and WHITE COMPANY, and DOES 1 through 100 inclusive, and each of them,

    Defendants.

No. C 09-00752 WHA

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO AMEND**

## INTRODUCTION

Following an order of dismissal, plaintiff Earl G. Ante filed this motion for leave to amend his complaint to state a claim. The dismissal order gave leave to amend but cautioned that all inadequately pleaded claims would be dismissed if the complaint's defects were not cured. This order finds that amendment would not be futile because the proposed amendment states a claim. Plaintiff's motion is **GRANTED**.[1]

## STATEMENT

Plaintiff was employed by defendant Office Depot, Inc., as a sales representative. He was assigned to provide the City of Berkeley with office supplies according to prices

---

[1] Defendant Office Depot, Inc., was erroneously sued as Office Depot Business Services. This order understands "Black Corporation" and "White Company" to be "Doe" defendants; neither has made an appearance in this case. Defendant requests that the Doe defendants be dismissed from this case. Plaintiff made no objection in his reply; accordingly, this order dismisses all Doe defendants from the case.

specified by contract. Allegedly, plaintiff discovered that Office Depot had been charging the city higher than contract prices. In November 2008, plaintiff was allegedly instructed by his manager to alter data on his computer in order to conceal contract items and pricing in preparation for an audit by the city. Plaintiff refused, believing that complying with his manager's instructions would constitute fraud. Plaintiff was terminated shortly thereafter.

Plaintiff filed a complaint with the California Department of Fair Employment and Housing, claiming that he was fired for refusing to participate in fraudulent conduct. He requested and received a right-to-sue notice from the department. Plaintiff then filed a complaint in federal court. Plaintiff claimed that defendant terminated his employment in retaliation for his refusal to participate in unlawful conduct and that this retaliatory discharge violated the California Fair Employment and Housing Act, Cal. Gov't Code §§ 12900 *et seq.*, and contravened fundamental public policy.

In the first claim of his original complaint, plaintiff asserted that he had a civil right under FEHA to refuse his employer's request to commit fraud. FEHA makes it unlawful for an employer to refuse to hire a person or to discharge a person from employment on the basis of "race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, sex, age, or sexual orientation." Cal. Gov't Code § 12940(a). Plaintiff, however, did not claim to have been discharged for any of the reasons enumerated in the statute. As a result, his FEHA claim was dismissed pursuant to FRCP 12(b)(6).

In his second claim, plaintiff asserted that he was wrongfully discharged in violation of the fundamental public policy that an employer may not retaliate against an employee who refuses to engage in unlawful conduct. Plaintiff solely pointed to FEHA as establishing such a policy. FEHA, for the reasons stated above, was inapposite to plaintiff's claim, and plaintiff otherwise failed to identify any statutory or constitutional policy that had been thwarted by defendant's alleged conduct in his pleading and briefing. As a result, defendant's motion to dismiss both claims was granted.

Plaintiff no longer pursues his FEHA claim. The proposed complaint solely seeks to revive plaintiff's retaliatory wrongful discharge claim.

2

**ANALYSIS**

**1. LEGAL STANDARD.**

Leave to amend a complaint should be freely given when justice so requires under FRCP 15(a). This standard is applied liberally. "In the absence of any apparent or declared reason — such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, etc. — the leave sought should, as the rules require, be freely given." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The principal limiting factor to the liberal amendment standard is that "[l]eave to amend need not be granted when an amendment would be futile." *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1097 (9th Cir. 2002).[2]

**2. RETALIATORY WRONGFUL DISCHARGE.**

In *Tameny v. Atlantic. Richfield,* 27 Cal. 3d 167 (1980), the Supreme Court of California established the common law tort of wrongful discharge in violation of public policy. In that case, an employer discharged an employee because of his refusal to participate in an illegal price-fixing scheme. The lower court sustained a demurrer, finding that no cause of action existed for the discharge of at-will employees. In reversing, the Supreme Court of California held that "when an employer's discharge of an employee violates fundamental principles of public policy, the discharged employee may maintain a tort action and recover damages traditionally available in such actions." *Id.* at 170. The decision categorized this tort as one of "wrongful discharge" of an employee that "contravenes public policy." *Id.* at 177–78. Crucial to the decision was the fact that the complaint identified a statutorily codified public policy that would have been violated had the plaintiff complied with his employer's order. *Id.* at 170. Subsequent decisions have required no less.

---

[2] Unless indicated otherwise, internal citations are omitted from all quoted authorities.

3

Later, in *Stevenson v. Superior Court*, 16 Cal. 4th 880 (1997), the Supreme Court of California articulated a four-part test for determining whether a *particular* public policy could support a wrongful discharge claim. Under this test, the policy had to be:

> (1) delineated in either constitutional or statutory provisions; (2) "public" in the sense that it "inures to the benefit of the public" rather than serving merely the interests of the individual; (3) well established at the time of the discharge; and (4) substantial and fundamental.

*Id.* at 894. *Stevenson* held penal statutes to be coextensive with public policy, while holding that civil statutes only embodied public policy goals in certain situations.

This order finds that the statutory provisions on which plaintiff now bases his present claim satisfy this test.

### A. California Penal Code § 72.

Plaintiff cited California Penal Code § 72 to ground his policy argument in statutory law. Section 72 states:

> Every person who, with intent to defraud, presents for allowance or for payment to any state board or officer, or to any county, city, or district board or officer, authorized to allow or pay the same if genuine, any false or fraudulent claim, bill, account, voucher, or writing, is punishable either by imprisonment in the county jail for a period of not more than one year, by a fine of not exceeding one thousand dollars ($1,000), or by both such imprisonment and fine, or by imprisonment in the state prison, by a fine of not exceeding ten thousand dollars ($10,000), or by both such imprisonment and fine.

The present case is similar to *Casella v. SouthWest Dealer Services, Inc.*, 157 Cal. App. 4th 1127, 1141 (2007), in which an employee claimed that he was wrongfully discharged by his employer for refusing to participate in activities he believed to be fraudulent. In *Casella*, the court held that the employee's complaint, which alleged that his employer's conduct violated Section 487 of the California Penal Code, was tethered to a statute. Moreover, as the employee had cited a statute in support of his theory that he was terminated for refusing to commit or aid and abet the commission of fraudulent activities, his claim was grounded in public policy.

In the present case, plaintiff alleged in his complaint that his employer in anticipation of an audit directed him to falsify data. The purpose of this purported order was to conceal the fact that his employer had been committing fraud by charging the city for office supplies at a

4

higher than agreed contractual rate. Section 72 makes it illegal to tender false or fraudulent documents to public officers for allowance or payment. Defendant allegedly presented fraudulent invoices for payment by the city and directed plaintiff to falsify records in order to facilitate this practice. Accordingly, it is not implausible that plaintiff would have violated California Penal Code § 72 if he had complied with his employer's instructions.

Defendant makes the argument that falsifying accounts does not run afoul of Section 72 if that activity does not constitute fraudulent tender for payment but, instead, merely conceals the fact that fraudulent documents had been tendered for payment on previous occasions. This argument construes plaintiff's complaint in too narrow a fashion. Plaintiff alleged that during the time of his employment, the City of Berkeley "was being charged" inflated prices. Read with the required liberality, plaintiff's complaint may be understood to suggest that to intentionally tender false accounts to the city for approval during an ongoing fraud is tantamount to a fraudulent presentation of false documentation for payment.

Once a plaintiff identifies an applicable statutory provision, the next step of the analysis is to show whether that statute embodied fundamental public policy. In *Stevenson v. Superior Court*, the California Supreme Court held that violations of criminal statutes categorically contravened public policy.

> An employer's obligation to refrain from discharging an employee who refuses to commit a criminal act does not depend upon any express or implied promises set forth in the employment contract, but rather reflects a duty imposed by law upon all employers in order to implement the fundamental public policies embodied in the state's penal statutes.

16 Cal. 4th at 888. Consequently, as plaintiff alleged that defendant discharged him as a result of his failure to comply with conduct that would violate a penal statute, plaintiff has stated a claim of retaliatory wrongful discharge.

Defendant cited *Markey v. Kudelski, S.A.*, No. 06-CV-1300, 2008 WL 65401, at *12 (S.D. Cal. Jan. 3, 2008), in arguing that the California Penal Code does not necessarily represent public policy. This argument is unpersuasive. *First*, *Kudelski* concerned a motion for summary judgment that was ultimately resolved on the basis of factual insufficiency. *Second*, the *Kudelski* court questioned, but did not decide, whether violations of the California Penal Code always

5

contravened fundamental public policy. *Third*, nothing in the *Kudelski* decision suggested that the Ninth Circuit or California Supreme Court opinions have modified *Stevenson*, which held without qualification that penal code provisions proscribing fraud reflected carefully delineated public policy.

This order finds that plaintiff properly invoked Section 72 in support of his allegation that he was wrongfully discharged in violation of fundamental public policy.[3]

### B. California Civil Code §§ 1709–11.

Plaintiff also cited Sections 1709–11 of the California Civil Code as a basis for his statutory claim. Section 1709 provides that "[o]ne who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damages which he thereby suffers." Section 1710 defines "deceit" as "[t]he assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true" or "[t]he suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact."

In *Hunter v. Up-Tight, Inc.*, 6 Cal. 4th 1174 (1993), the California Supreme Court reiterated that employment relationships are fundamentally contractual, such that wrongful terminations give rise to tort actions only where a significant public policy has been violated. In *Up-Tight*, the plaintiff sought to recover tort damages from his employer for fraud and deceit on the theory that the latter made misrepresentations to bring about the termination of his employment. Pointing specifically to Sections 1709–10 of the California Civil Code, the court held that "while fraudulent conduct is generally condemned by society, we cannot agree that the prohibitions embodied in the statutes concern society at large." *Id.* at 1186. The court noted that the fraud perpetrated in this case strictly concerned the employer and the employee and, therefore, did not rise to the level of public policy.

---

[3] During the June 11, 2009 hearing on this motion, plaintiff cited Section 2856 of the California Labor Code to support his theory that his termination violated fundamental policy. As this order finds that plaintiff's complaint otherwise states a claim upon which relief can be granted, the merits of this new claim need not be considered at this juncture.

6

1    *Hunter* left open the possibility that fraudulent conduct could contravene fundamental
2    public policy in other contexts. *First*, the court pointed to *Miller v. Fairchild Industries, Inc.*,
3    885 F.2d 98, 509–10 (9th Cir. 1989), where the plaintiff employees were fraudulently induced
4    to forbear bringing a Title VII action against their employer. In holding that the plaintiffs could
5    bring a tort claim notwithstanding the contractual nature of their relationship to the defendant,
6    the court emphasized that the fraud in that case was collateral to the employment agreement.
7    *Next*, the court held that a "misrepresentation *not* aimed at effecting termination of employment,
8    but instead designed to induce the employee to alter detrimentally his or her position in some
9    other respect, might form a basis for a valid fraud claim even in the context of a wrongful
10   termination." *Hunter v. Up-Tight, Inc.*, 6 Cal. 4th at 1185.

11   The California Supreme Court has not had an opportunity to rule explicitly on the public
12   policy status of civil fraud in wrongful discharge cases which do not merely concern the
13   employment relationship. Lower courts, on the other hand, have found that proscriptions
14   against fraud in the employment context may under certain circumstances inure to the benefit
15   of the public, rather than exclusively to that of private parties. In *Haney v. Aramark Uniform*
16   *Services., Inc.*, 121 Cal. App. 4th 623 (2004), the plaintiff allegedly was terminated for refusing
17   to comply with his employer's fraudulent billing practices, which included overcharging
18   customers. While the plaintiff in *Haney* cited California Civil Code §§ 1709–10 in support of
19   his claim, the court in making its decision appeared to focus on California Penal Code § 484,
20   which provides, in relevant part: "[e]very person . . . who shall knowingly and designedly, by
21   any false or fraudulent representation or pretense, defraud any other person of money . . . is
22   guilty of theft." The court held that "when an employer discharges an employee who refuses to
23   defraud a customer, the employer has violated a fundamental public policy and may be liable in
24   tort for wrongful discharge." *Haney v. Aramark Uniform Services, Inc.*, 121 Cal. App. 4th
25   at 643.

26   In the present case, plaintiff has cited civil as well as criminal statutes in support of his
27   claim. The plaintiff alleged that the defendant, a public company, was defrauding the City of
28   Berkeley, a public entity. This claim does not start and end with the employment agreement;

7

1  the claim does not merely impact the employment relationship of private parties, but concerns
2  the conduct of a public company with a municipality. Furthermore, the basic principle
3  recognized by the *Haney* court applies equally to the present case: theft through fraudulent
4  misrepresentation has long been defined as a crime in the state of California. Under the current
5  state of the law, it is settled that firing an employee for refusing to defraud a public entity of
6  money, an offense codified in the California Penal Code, would violate longstanding and
7  fundamental public policy.

### 3. SUFFICIENCY OF THE PLEADINGS.

Defendant argues that plaintiff does not state a claim because he failed to meet the special pleading standard set forth in FRCP 9(b). In light of the Ninth Circuit's holding in *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097 (9th Cir. 2008), however, defendant's contention that plaintiff was required to plead his case in accordance with FRCP 9(b) is without merit.

The plaintiff in *Centinela* was a nurse at Centinela Hospital Medical Center. During her employment, she detected certain practices at the hospital that she believed were intended to inflate Medicare reimbursements. Plaintiff was concerned that these practices were below the standard of care and would subject her to civil and criminal liability. When she brought these fraudulent practices to the attention of her supervisor, she was purportedly told to either comply or be fired. The plaintiff alleged that she was subsequently terminated by the hospital because she refused to submit false claims and records. The court held that the plaintiff's termination, if proven to be an act of retaliation by her employer, would violate the False Claims Act. 31 U.S.C.A. §§ 3729 *et seq*.

The parties in *Centinela* disputed whether the notice pleading standard under FRCP 8(a) or the heightened pleading standard under FRCP 9(b) would apply to plaintiff's claim. As the FCA is an anti-fraud statute that requires fraud allegations, complaints alleging FCA violations must fulfill the requirements of FRCP 9(b). There is a difference, however, between plaintiff's FCA *retaliation* claim and a claim of a FCA *violation*:

> To state a claim for a FCA violation, a plaintiff must allege that
> the defendant actually violated the FCA by knowingly submitting

8

> a false claim or providing faulty goods to the government. In contrast, to state a FCA retaliation claim, a plaintiff must show that he or she suspected that the defendant submitted a false claim — not that the defendant actually submitted one.

*Centinela*, 521 F.3d at 1103. This difference is critical because "the emphasis of a retaliation claim is on the employee's protected action and whether the employer retaliated against the employee because of that action. The fact that the claim arises from an allegation of fraud does not alter its nature as a retaliation claim." *Ibid*. As the plaintiff's claim focused on the retaliation, rather than the defendant's allegedly fraudulent conduct, the plaintiff was not required to plead under the FRCP 9(b) standard.

The factual situation in the present case parallels that in *Centinela*. Plaintiff, like Mendiondo, alleged to have been terminated in retaliation for refusing to comply with his employer's request to commit fraud. Retaliation is the essence of plaintiff's claim — fraud is an incident. The crux of the matter is that plaintiff was allegedly fired because he refused to comply with an activity that he believed to be illegal. The background issue that the illegal activity in this case happened to be fraud, rather than any number of other crimes, should not alter the pleading standard for the entire complaint. The heightened pleading standard of FRCP 9(b) does not apply to retaliatory wrongful discharge claims. *See ibid*.

In opposing plaintiff's motion to amend, defendant also challenges the sufficiency of plaintiff's pleadings under FRCP 8(a)(2). Where, as here, the heightened pleading standard of FRCP 9(b) does not apply, the complaint need only satisfy FRCP 8(a). Under this standard, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FRCP 8(a)(2). The purpose of this provision is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Centinela*, 521 F.3d at 1104.

As plaintiff's complaint outlines the "who, what, where, and when" of the alleged injury, it is hard to see how the complaint has not put defendant on "notice." Defendant cites *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (U.S. 2009), in making the conclusory argument that plaintiff's pleaded facts have not "nudged" his claims "across the line from conceivable to plausible." However, as *Ashcroft* does not impose a "probability requirement," and the

9

opposition has not demonstrated how the facts *in this case* are implausible, defendant's own argument has not crossed that line. *Id.* at 1950–51.

## CONCLUSION

Plaintiff's proposed amended complaint states a claim upon which relief can be granted. For the foregoing reasons, plaintiff's motion for leave to file a first amended complaint is **GRANTED**. Defendant must answer **WITHIN TWENTY DAYS**.

**IT IS SO ORDERED.**

Dated: June 15, 2009.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE